is 5-19-0017 in the Estate of Dunston. Counselor, are you ready to proceed? Good afternoon, Your Honors. I'm Illinois Assistant Attorney General Carl Elitz, Appearance for the Attorney General's Office. At issue is whether the Dunston Estate is entitled to defer estate taxes under a qualifying, terminable interest property election. Your Honors, every tax has to have a basis on which tax is assessed, and a moment in time when that assessment is made. For sales tax, it's the time of the sale, and it's the value of the sale that is taxed. For income tax, it's all the income earned in a given year, and that tax is assessed at the end of the year. For estate tax, the moment that matters usually is the moment of the decedent's death. The Illinois tax is assessed on the gross estate of the decedent at that time, but there's an exception that applies in this case. The estate of a married person is given the opportunity to set aside property that will not be taxed at the moment of the decedent's death,  Such qualifying property must be owned in a very specific way, however, to achieve the allowance. The property must essentially be owned as a life estate, with income from that used exclusively for the benefit of the surviving spouse, and no one may have any power to dispose of the qualifying property during her lifetime. In this case, Mr. Dunston established a revocable trust for his property, and when he died, the terms of the trust established how his property was owned. The property was held in trust, but Mrs. Dunston retained the power to dispose of the assets, passing them to Mr. Dunston's children and their spouses if she elected. The property was therefore not qualifying for putative election purposes. Nonetheless, Mr. Dunston's estate filed a tax return, making the putative election on approximately $1 million of his property, and paid $0 in estate tax, an Illinois estate tax, based on this election. Shortly after, Mr. Dunston's estate asked the Attorney General's office to hold off on processing the return because they wanted to file an amended return. That amended return never came. The statute of limitations for seeking unpaid taxes was running, and just before that deadline, the Attorney General filed a lawsuit claiming that the putative election that had been made on the tax return was not proper. Now, the circuit court, after Mrs. Dunston disclaimed that disqualifying power, held that the putative election was proper and dismissed the Attorney General's complaint. That was error. There were many reasons that was error. Under Illinois law, the putative election can be made on a timely filed Illinois tax return under Section 2056 of the Internal Revenue Code. That's the provision of the federal code that defines what a qutip is. Illinois has no corresponding qutip definition. So obviously, the General Assembly intended a state to look to federal law for whether the qutip was a viable qutip or not. There's many provisions in the federal code that qualify what can and can't happen with a qutip, and there's federal regulations as well. And Illinois has always followed those regulations in defining what state qutip election requires. Indeed, the Illinois Attorney General's instructions on the tax returns notifies filers that they should look to the federal law requirements for making a qutip election. So when Dunston Estate made the qutip election but didn't follow the requirements of that section, we know that the qutip election was not good, and the million dollars that they deducted off of Mr. Dunston's estate was not proper. And that's essentially what the complaint that was filed by the Attorney General alleged and tried to get the payment of that overdue tax money. If Section 2518 of the federal code, which sets nine months as the amount of time a person has to disclaim an offending power for a qutip, is not applied in this particular case, as the taxpayers argue, then there's essentially no amount of time in which the estate can't disclaim a power that would offend the qutip provisions. A year, two years, three years. In this case, Mrs. Dunston disclaimed the qutip offending powers that were in Mr. Dunston's trust three and a half years after the time, after the nine months that would be the time in which a qutip election would normally be taken. So the circuit court's decision that Section 2518 doesn't apply would give Mrs. Dunston all the time forever to disclaim. And that won't make sense. That leaves the Attorney General with no opportunity ever to assess tax because as soon as the Attorney General would assess tax on a non-qualifying qutip election, then as happened in this case, the taxpayer would simply say, well, if that's a non-qualifying power that we're not entitled to have, then we'll disclaim that power. The tax would still be paid. Is that correct? Or did you use that? The tax would be deferred until the spouse died. Yeah. But there would be the uncertainty that would go with that time period as time passes because don't forget, under the Dunston estate's terms, Mrs. Dunston had the power to dispose of that property. Nothing would stop her from doing that. So although we can say the tax would be paid, if Mrs. Dunston were to exercise that power, then it wouldn't be there for the estate to be taxed when she died. So it's important for the estate to follow the qutip requirements, one of which is that that property is locked up at the moment she makes that election. It's an irrevocable election. And at the moment that Mr. Dunston died, she had the power to dispose of that property. Nine months later, she had the power to dispose of that property. And then after nine months, she had the power to dispose of the property. She had the power to dispose of that property for three and a half years. And any time during that time she could have disposed of it, it wouldn't have been available to the state to tax because it wouldn't know whether the state could have pointed out the fact that she had wrongly disposed of the property. It would create a mess. The idea of the qutip election is to lock up the property at the time of the filing of the tax return, and then the attorney general doesn't have to worry about the property not being there at the time of the second spell death, if that makes sense. So it is in the statute that the legislature has to look to the statute to determine what the statute of limitation is. Is that there someplace? What the statute says is that the state election should be made on a timely filed Illinois return in compliance with Section 205.6 of the federal statute. And that's the statute. If you go to 205, is it there? Or you've got to go to 205 until you go to someplace else? 205.6 tells you what a qutip election is. 2018 tells you that a disclaimer affecting the qutip has to be made in nine months. So it's not actually the one that sets the statute of limitation. It's not the one cited. It's the three down number. Well, the statute says, the Illinois statute says, that the qutip election is taken under Section 205.6. So then you go to 205.6, and then that tells you something else, right? That tells you what the definition of a qutip is. And then the surrounding sections in the federal statute. So then you've got to go to another section to find out that it's a nine-month statute. Is that what you do? Yes. There's a separate statute that tells you about disclaimers. So then you have to go in and set up statutes. You're saying whatever the federal statute is is what the Illinois law is. Is that what they're saying? The Illinois General Assembly said that the election would be under Section 205.6. That's the definition of a qutip. There are surrounding sections of Section 205.6 which tell you how a qutip is administered. And the taxpayer's argument here is that because the limitations on disclaimers is not in Section 205.6. It's not. It's not. It's in 201A, I believe, if I have my numbers correctly. It's not. It's in 251A. It's not in the same section that defines a qutip, but there's nothing to suggest that the General Assembly had any intention but to follow federal law when it created the possibility of a state qutip. And Illinois has no other provisions governing qutip law. But they could easily pass that, couldn't they? Sure. But in the absence of them passing that, what is the limitation on disclaimers in a qutip? Apparently, if the taxpayers are right, there are no limitations. Well, the legislature could have made it. That's what I'm trying to get at. There is a possibility that they could have done it if they wanted to. The General Assembly could pass special legislation or different legislation putting a limitation on disclaimers, but there's no reason to because we know from Section 2B1 of our statute that the qutip election has to be made on a timely filed Illinois return, and we know that that has to be done within nine months of the decision. Because the federal statute says nine months. No. No, because the Illinois statute says, the Illinois statute says on a timely filed Illinois return, and the Illinois statute says you file nine months. Oh, okay. So Illinois law anticipates a tax return within nine months of the decision dying, and Illinois law says the qutip election must be made on that return. So we know that nine months is what was in the General Assembly's mind when they passed this section. Now, that's, it happens to be that 2518 of the federal code also says you have nine months to disclaim. So everything is pointing to nine months as the critical time period to make a qutip election. And as I said, if we don't use nine months, then we have no time to use, and that just puts the Attorney General in a position where we can't assess tax because there's no date on which we can be assured that the property is in the status that would allow a qutip or not allow a qutip. We have to have a date of assessment, and it's got to be nine months after the decision died. Otherwise, there's none. Now, we know this is also true because recently in the Fourth District, the Bailey decision was issued. And Bailey says that the critical moment is the moment of death for estate taxes, and the fact that there's a disclaimer provision that allows property to be dispersed in a different way, maybe later on, doesn't affect the fact that a tax has come due. In Bailey, the tax was due at the moment of the decedent's death. The property was owned jointly at that moment in time. There was a special provision for jointly owned property in the tax code. Mrs. Bailey said, I'm going to disclaim that property. I don't want it. I'm going to own it jointly or in tenants in common with my daughters. She changed the way she received that property. The Attorney General said, but the tax is going to be assessed on joint property because that's the way you owned it at the moment of death. And the Attorney General's arguments were adopted by the appellate court in the Fourth District. That's a joint tenancy case, right? It is, but the critical point is that the court examined when the taxes were due. In that case, it was the moment of death. Looked at whether there was an assessment of tax at that time. There was on jointly held property. The Attorney General assessed that tax. Mrs. Bailey then disclaimed the property. It became common tenants in common property. It wouldn't have been taxed under that provision. But the court said it doesn't matter because the disclaimer provision is about the way the property changes hands. It's not about how tax is assessed. As the court said, it's not the time. The disclaimer provision is not a time machine, meaning it can change the way you receive property, but it's not going to get you out of taxes that have come due and were assessed in the past. And that's my point about how every tax has to have a basis and a date of assessment. We need to know when this tax is going to be assessed. For Q-Tip purposes, we know it's supposed to be on a timely filed Illinois tax return. That's nine months after the decedent dies. Mrs. Bailey disclaimed three and a half years after that period of time. So that leaves the Attorney General unable to assess this tax because if people can draft trusts that give them powers that are not consistent with Q-Tip, they elect the Q-Tip with powers that are inconsistent with Q-Tip, they can have their cake and eat it too, unless the Attorney General notices and sues them and points it out. And even then, the taxpayer in this case says, we shouldn't have to pay the tax because the Attorney General delayed. You shouldn't have to pay the tax because the Attorney General's arguments are against public policy. In other words, we're unable to nail down when it is the taxpayer thinks they should owe the tax. They have no date they think should owe it. They're always going to say, well, if you're going to audit us, if you're going to hold us liable for taxes, then we're going to disclaim that provision and we're going to pay nothing, which is what happened here. We need to know what day to assess the Q-Tip on. Counsel, how do you recognize the separate independent language per the Act regarding the person's selection of Q-Tip under Illinois law? The separate independent language has always been read by our office as meaning that the taxpayer has to do everything that would be required for a federal Q-Tip, but does not need to file with the Internal Revenue Service for a federal Q-Tip to get the benefits of a state Q-Tip. You can have a state Q-Tip and forego filing for a federal Q-Tip. That means that the state Q-Tip is separate and independent. You can have both or you can have one or the other, but you don't have to file together. One of the ways that I think the General Assembly was concerned that Illinois would say, if you don't get a federal Q-Tip, you can't have a state Q-Tip. So the separate and independent language says, you can have a state Q-Tip, you don't have to get a federal Q-Tip, but because there's no rules governing state Q-Tips, we need to look somewhere. So we looked at federal law for what the rules are. And you can still reduce your state taxes even though you haven't asked for a federal Q-Tip. So I suppose the only other comments I have regarding our arguments are things that are in the brief that I think can be a little distracting and aren't quite right. Nothing in the Attorney General's arguments are that the property can't, that Mrs. Dunstan can't disclaim this power. She can disclaim the power. She can do it under the disclaimer provisions of the probate code. What we're saying is, is that she can't affect the taxes that have already come due when they filed the tax return nine months later, after Mr. Dunstan died. We did not delay in bringing the suit. They asked us to allow them to file an amended return, and they never filed it. So we ended up having to file the suit one week short of the statute of limitations running on us. I want to point out, and I apologize for this, Your Honor, my opening brief says that they filed their taxes in May, and, in fact, they filed them in June. That's consistent with our complaints. And if you were to look at that, the timing wouldn't work out. But we filed our lawsuit within three years of them filing their tax return. Nothing suggests that the Attorney General had any information regarding the disqualifying power that Mrs. Dunstan had. We learned of it after we did the audit. The audit happened after they filed the taxes. The taxes were filed well past that nine-month period. So we learned that the earliest that we could have learned about this disqualifying power was after the time for disclaimer had passed, which may explain why they didn't file the tax return, the amended return. There's arguments in our brief about how unfair it is that they're being assessed interest on this amount. The reason they're being assessed interest is because they proceeded by waiting for us to sue them. They could have sued us under the Tax Protest Monies Act. If they had sued us under the Tax Protest Monies Act, they would have paid the tax. That would have stopped the interest occurring. We would be standing here making the same arguments, but there wouldn't be interest running. The reason interest is running is because they ended up just waiting for us to sue them. And when you do that, when the state sues you for taxes, interest runs. So that's why there's an interest penalty attached to what we believe is what should be recovered here. So the circuit court should not have dismissed this case when pleading to your Honor. The case should have been allowed to proceed. Section 2518 applies. The provisions of state law expect 2518 to apply. The time for making a Q-tip election is nine months after the decedent's death. If you don't make a Q-tip election timely, then the Q-tip election is not available and taxes are due otherwise. So unless there are questions, I'll just save my time for a while. Thank you very much. May it please the Court. My name is John Simpson. I am co-counsel with Mr. Mordach and Mr. Ballard on this matter representing the family of Mr. Dunstan. I'll be opening the argument, and Mr. Mordach will go into details of the argument regarding disclaimers and conclusions. My entire career has been spent with these issues. I started with the Illinois Attorney General's Office in 1976 in what was then the Inheritance Tax Bureau, and then later, in 1985, it was switched to the Estate Tax Section, and I retired in 2011. An understanding of the history of the Qualified Terminal Interest concept is critical to this case. In the late 1970s, there was no Q-tip. The exemption for spouses was limited to essentially one-half the estate of the first-to-die spouse. But in 1982, the federal estate tax was amended to allow an unlimited marital deduction. In other words, any amount could pass to a surviving spouse, whether it was $5 million or $500 million, and there was no tax due. The clear intent of this change was so estate tax would only be due upon the death of the surviving spouse. Now, the Internal Revenue Service and estate planners immediately realized there was a problem that had been created for existing estate plans. Most of these plans, wills, and trusts called for half-right, half of the estate to go outright to the surviving spouse or controlled by the surviving spouse. That was exempt. And then half would go into a trust with a life income for the spouse. So you're only going to take one-half of the exemption that you could will out. The solution to that problem for those existing plans was the concept of the Qualified Terminal Interest, the Q-tip. The Q-tip allowed a life income interest to qualify as a marital gift and thereby exempt. In return, the Q-tip amount is included in the taxable estate of the surviving spouse. Hence, the estate tax was due at the surviving spouse's death. In 1985, Illinois switched to an estate tax system that mirrored the federal system. No federal tax due, no Illinois tax due in virtually all cases, a small exception that doesn't apply in this case. So from 1985 to 2011, there was no problem. A federal Q-tip resulted in similar Illinois treatment and elimination of tax at the first spouse. But in 2011, Illinois amended its statute so the Illinois exemption would be lower than the federal exemption. Thus, a life income interest for the benefit of a surviving spouse might not need to be subject to a Q-tip to eliminate federal tax. But that trust is greater than the amount of the Illinois exemption will create an Illinois tax. I want to throw in a short example similar to this estate. If you've got a $5 million estate, there's no federal tax no matter what you would do, but there is an Illinois tax since there's only a $4 million exemption for the Illinois estate. So $1 million would need to be subject to an Illinois Q-tip to get you to zero tax. So how to fix that problem? The Illinois Bar and the Attorney General's Office soon responded with the concept of an Illinois Q-tip. In some estates, like Mr. Dunstan's, no Q-tip was needed to get to zero federal tax, but you did need an Illinois Q-tip to get to zero Illinois tax. I was one of the Illinois Attorney General's staff who drafted and reviewed the amendment that added the Illinois Q-tip. That language's interpretation is the issue in this case, Section 2B-1 of the Illinois Estate Tax Act. That language refers to, as has been noted already, Section 2056-B-7 of the Internal Revenue Code. That's the provision that simply provides for the federal Q-tip. It says nothing about disclaimers. It says nothing about Illinois or other states' Q-tips. So now to the problem. The Attorney General now argues that some boilerplate language in the trust that was created in 2007, four years before the change, somehow allows the Illinois Q-tip. I must disagree with Mr. Ellis on one point, and that was he was indicating that this language automatically prohibited the Q-tip. We do not agree with that. We have several arguments that were raised at the trial court which the trial judge never reached that this trust should be interpreted in a way to allow an Illinois Q-tip. The court never reached those issues. However, in an abundance of caution, the family here executed a disclaimer eliminating the language that's purported in the problem. The Illinois Attorney General argued at the trial court that the disclaimer was not effective because it did not comply with the federal gift tax provision regarding disclaimers, as Section 2518 has been mentioned. The trial court ruled that for Illinois disclaimers, compliance with 2518 was not required, and that ruling resolved the case. So the question, as has been posed here already today, is 2518 somehow impliedly part of Section 2B1? It cannot be. I realize I've gone on at some length here with a history lesson, but I think that history and context is important. The Q-tip, all the way back to the early 1980s, has always been a remedial provision. The Q-tip was intended to save the full marital deduction for documents that might not provide an outright bequest of that amount to the surviving spouse. And that is all the family asked for herein, that same treatment. The Illinois legislature, in its debates, which we have provided as part of the record, made clear that the Illinois Q-tip was also remedial. It was intended to make certain the tax was only due at the death of the surviving spouse. Again, that is what we ask. The Attorney General now, on the other hand, seeks to have tax paid at this point, even though Mrs. Dunstan is still very much alive and is with us today. So what's the Attorney General's argument? They argue that implied into the Illinois statute is a federal gift tax provision and the federal regs related to there. And I want to make this very clear. Only through the use of those federal regulations can Illinois deny the Illinois Q-tip election. Counsel, also the opposing counsel made the argument, hey, if we don't use the nine-month time frame, then there is no time frame to go on and on. And so what's the work or what's the agency to look at? That's just a red herring, Your Honor. If this property had been somehow alienated away, it would not be eligible. We're not confessing that. They're arguing that somehow at the date of death or in those first nine months, if that exists, then it couldn't qualify. We're saying you can correct that problem if you haven't alienated the property away. As Mr. Mordock would go into, for an Illinois disclaimer to be effective, there can't have been no alienation prior to the disclaimer. And we never reached those facts in this case because we were on a motion to dismiss. So I think it's a complete red herring. There was never any alienation here. The property interest still qualifies at this point. So what did we put into the Illinois Q-tip? We put it into the language that Your Honor noted, separate and independent of the federal election. That's the language we drafted and the language the legislature accepted. We understood that because of different exemptions or elements of Illinois law, Illinois state planning documents might be completely different than federal statutes or planning. The Illinois Attorney General now argues that the language means the separate and independent Illinois election must comply not only with federal gift tax provisions, but also the regs related to it. That can't be. The Illinois election is separate and independent and absolutely should not be controlled by any arcane federal regulation connected with the federal system. If the Attorney General is correct, think of this, the federal rights could be changed at some point and completely destroy the Illinois Q-tip provision. Could the legislature have intended that? I think not. With the provision specifically made certain that Illinois tax was only due at the surviving spouse's death, the separate and independent language. Now in their brief and in today's argument, the Attorney General has argued that somehow the fact sheet and instructions connected to it incorporate the federal regulations. That is simply not correct. First, the language isn't even on the return. It's on an instruction sheet that's beside it. Illinois courts have never argued somehow the whole return instructions have become controlling regulations, which this court has already moved. The Illinois Attorney General could have done. Second, the language in the instructions doesn't even mean what they argued. I'm confident in the intent of the drafter of that language because I'm the person who drafted it. In all those years back in 2009 when we started the Illinois Q-tip provision, the language says that the Illinois Q-tip election follows the federal rules for treatment of property as passing to the surviving spouse and inclusion in the surviving spouse's estate. It's clear that the language only references the inclusion of the Q-tip property in the surviving spouse's estate. We're not debating that. This Q-tip property will be included in Mrs. Dunstan's estate at her death, of course we hope many years from now. So the instruction language simply has no bearing on the issues herein. Mr. Mordoff will go more into disclaimers and how they should affect this case. Thank you. Thank you and may it please the court. My name is Greg Mordoff. I'm co-counsel with John Simpson and represent the Dunstan estate in this matter. Now that you've had a background on the Q-tip election, I'm going to discuss the actual facts of this case and address the arguments made by the attorney general here this afternoon. At the outset, it's important to note the sole issue before this court, and that is whether or not the federal nine-month limitation on disclaimers applies to the state disclaimer that was executed in this case. Now counsel has argued that the Dunstan estate here today has argued that the Dunstan estate's Q-tip election was not timely filed. However, that was not raised in the lower court, and a review of the record will show there is no argument that the Q-tip election was made in a timely fashion. It was made within the time limit that is set out. It is only the attorney general's interpretation that the property that the trust involved had an invalidating provision that leads them to conclude it was not timely filed. But there is no dispute and there was no argument made at the lower level that, yes, the estate tax return and the Q-tip election were timely made. The only arguments made by the attorney general at the lower level was that the federal exemption applied. There was no argument that the federal disclaimer provision applied. There was no argument that even if this had been made within nine months of the filing of the estate tax, that the tax would have still applied at this time, which seems to be counsel's position here today. The attorney general is now arguing that the tax is due at the moment of death and at the moment of filing and it can never be disclaimed. That was argued today. Yet, if you look at the briefs in the lower case, they argue, well, no, if it would have been done within the nine months, then the disclaimer would have been effective. Now, the lower court ruled that the disclaimer was effective because Illinois law applied. In looking at the State Disclaimer Act, in the Illinois Probate Act, there are ways that a disclaimer can be invalid. And our General Assembly has laid those out. They did not include a nine-month provision like the federal government did, but they laid out four elements that if any one of them is met, a disclaimer is invalid. One, if there's a judicial sale of property, you cannot execute a disclaimer. Two, if there's a contract or transfer of property by the disclaimant prior to disclaiming, the disclaimer is invalid. Three, if there's a written waiver of the right to disclaim, then the disclaimer is invalid. And four, if there's an acceptance of the property by the disclaimant, or in this case, if Mrs. Dunstan had used her power of appointment, then the disclaimer would be invalid. And that was the hypothetical that counsel put out this afternoon, but that's simply not the case. Had that power been used, the disclaimer would be invalid. That's what the General Assembly has determined invalidates a disclaimer. So Illinois did not put a time limit on exercising a disclaimer. Instead, they put actions that would invalidate that disclaimer. Now, as Mr. Simpson discussed, the federal provision, 2056, does not mention disclaimers. That is – it merely mentions how a Q-tip – what a Q-tip is and how to obtain a federal Q-tip. It's not until you get into a completely different tax, the federal gift tax, where disclaimers and the non-implementation that's brought up by the Attorney General in this case is discussed. Now, the only way to get there is through federal regulations. So the Attorney General here today is asking you to make the leap from a separate and independent state election that references definitions and application of a federal Q-tip election to then take the entirety of the Internal Revenue Code and its multitude of regulations and apply them in how the Attorney General interprets the Illinois state tax. But again, nowhere in statute or no cases have yet addressed that interpretation. And that leads me to another point. There are no Illinois regulations that have been promulgated to discuss whether or not the Illinois disclaimer provision applies. There have been no rules promulgated to support the interpretation of the Attorney General here today. And, in fact, there has not even been a bulletin that has been issued by the Attorney General to any of the estate planning attorneys here in the state to address this issue. Now, it's not an uncommon issue and it's not a provision in a power that's out of left field. The language used in the trust that said issue was recommended by ICIL. It was in 2007 before there was this divergence between the federal and state Q-tip elections. As Mr. Simpson indicated, it's boilerplate language. There are trusts with this language all throughout the state. So we're not dealing with a unique provision in that sense. Now, counsel has indicated that to look to federal law for viability. Again, separate and independent language shows that we're dealing with an entirely separate Q-tip. We're dealing with it under Illinois law and pursuant to Illinois law. Mr. Simpson addressed the qualifying language of the instructions that were referenced by counsel. So, again, the Illinois law nine-month time to file an estate tax return and to elect Q-tip is in no way dependent on Section 2518 of the Internal Revenue Code. Those nine months were not formed in conjunction with one another. They are separate and independent pieces of separate and independent codes. Finally, to briefly touch on the Bailey case. Again, the Bailey case, the key point in Bailey was that the only way to sever a joint tenancy is an inter vivos modification of that interest. The court there was looking at valuation of a present interest of a joint piece of property. And Illinois common law states that the only way to sever that joint tenancy is when both individuals are alive. Once one passes, the joint tenancy ceases to exist. In this particular case, the allegedly offending power at issue did not exist until the passing of Mr. Dunstan. At that point, Mrs. Dunstan was vested with the power of the trust, the power of appointment. But it was at that time that that power existed. And there's never been any argument and certainly never been a holding that a power of appointment cannot be disclaimed. And in fact, the power of appointment in this case was disclaimed. And if you look at the disclaimer, the disclaimer was brought pursuant to Illinois law. There's no statute, no regulation or no bulletin that makes the federal disclaimer provisions of 2518 applicable to the Illinois state tax and Illinois Q-tip election at issue in this case. So the state's attempt, as a final point, the intent of the decision in this case is clear. And Mr. Dunstan wanted to pass, he wanted to create a Q-tip. He wanted to pass it on to Mrs. Dunstan tax-free and allow her to use the income from that, from that, from those assets for the rest of her life. When Mrs. Dunstan passes, the state will get its tax. But Mr. Dunstan wanted to give it to her tax-free. She never utilized her power of appointment. So the state's attempt to back in this nine-month limitation on federal disclaimers and make them applicable to state disclaimers solely for Q-tip purposes is contrary to Illinois law. It's contrary to Illinois public policy as discussed by John. And it's contrary to the intent of the decision.  Thank you, counsel. Your Honor, Mr. Dunstan's intent is clear from the document that he signed, which was to allow Mrs. Dunstan a power to dispense property to his children and to their spouses. That's what he agreed when he signed that document. That is his intention when he died. That's the only thing we really can point to as to what he intended. And we know that's not a power that a Q-tip election is entitled to have. There's a case cited in my brief, the State of Spencer, which was written in 1995, where the Fifth Circuit explains that a Q-tip election binds the property so that it can't have that power. So the arguments that Mr. Simpson made earlier about how if Mrs. Dunstan were to alienate the property, then that would just not be a Q-tip property. And so if she were to sell some of it, that wouldn't be Q-tip. But if she kept some of it until the moment she died, that would be – he seems to want to have his cake and eat it, too. He doesn't want to have to make an election at the time of Mr. Dunstan's death, putting the property in a life estate that can't then be touched except for the benefit of Mrs. Dunstan. And that's what the Q-tip is. It was in 1995 when the Spencer case was written. It was – that was what a Q-tip was when the General Assembly wrote Section 2B. I know Mr. Simpson's telling you that he wrote it, but the General Assembly wrote it. And what the General Assembly wrote in that statute was the Q-tip election had to be made on a timely filed Illinois return. That comes nine months after the decedent dies, no longer. So we know the General Assembly had nine months in mind when they adopted this provision about Q-tip law. Mr. Simpson is not acknowledging that the argument that she had of the power that is inconsistent with Q-tip has been forfeited. This was an argument below they told the circuit court that it was unfortunate that this power was in the trust. It is inconsistent with Q-tip law, and that's why they were disclaiming. Now Mr. Simpson is telling us, well, no, we're not really giving that argument up. It's possible for her to alienate this property even though they put a Q-tip on top of it. It's not. It was an argument that we made. It was settled in the circuit court. It was an argument that he could have made in his briefs to affirm on a basis other than the one the circuit court used, but it's not there. So you can't come to the appellate court and say we have this other argument. I'm not going to make it right now. He had a chance to make it here, didn't make it. It doesn't matter. It's inconsistent with all the federal law. You can't alienate property once you put it in the Q-tip. It has to be locked up for the benefit of the spouse. I know he disagrees with me, but we disagree. My argument is not that the disclaimer is not effective. My argument is the disclaimer is not effective for avoiding tax. It's possible for her to disclaim powers or any gift that's made by Mr. Dunstan. She can disclaim it and not take it, and she won't get the property then, and that's fine. And if taxes were imposed after that moment in time and she doesn't have the property, then there won't be taxes. But here the taxes are imposed at the moment of death or the moment of the Q-tip election. So when she disclaims it three and a half years later, the time to avoid the tax has passed. She can disclaim the power. There's nothing ineffective about that. There's no reason why she would want to disclaim it if the Q-tip is not effective. I understand that tradeoff. But my argument is not that she can't disclaim. My argument is it doesn't avoid the tax. That was the result in Bailey. That's what the court meant when it said section of the disclaimer statute 2-7 is not a time machine. You can't use it to go back and avoid taxes that have already come due. We have to have some meaning to the word Q-tip or to the Qualified Terminable Interest Property. The general simply used that term and has not given us directions as to what that means. It must mean what it meant at the time they passed the legislation, and that's where the court should look for what a Q-tip is. And that's consistent with all the other arguments I've made. And the section that says you have to make a Q-tip disclaimer in nine months to avoid tax, note I said avoid tax, not – there's nothing in section 2518 that says the disclaimer is not effective. It says to avoid a state tax, you have to do it in nine months. I think if there's no other questions, I ask the court to reverse the circuit court and to remand the case for further proceeding. This case should not have been dismissed on the plaintiffs. Thank you. Thank you. Excuse the case will be taken under advisory.